STURGIS, Judge
(dissenting).
Affirmance by the majority of the order reviewed by this interlocutory appeal is predicated on the authority of Tribune Company v. Approved Personnel, Inc., Fla.App.1959, 115 So.2d 170, which was an interlocutory appeal in the same suit and involving the same parties and subject, to which I dissented. Thus the rule and reasoning of the majority on that appeal is reapplied as determinative of the issue on this appeal. The sole point for determination, as in the former appeal, is whether, under the provisions of F.S. § 46.04, F.S.A., the trial court has venue to entertain this action commenced in Leon County, Florida, by the plaintiff (appellee) against the defendant (appellant) domestic corporation.
As expressed by my dissent on the former appeal, it was my view that on the proofs then available the motion to dismiss for lack of venue was well taken and that the order denying it should have been vacated. While the majority did vacate that order (upon principles with which I differed), it remanded the cause to the trial court with directions to receive additional proofs on the issue of venue, as raised by the motion to dismiss, and to thereupon enter another order in the premises. Pursuant to that directive additional proofs were received and the trial court then entered the order now on review, again denying the motion to dismiss.
The proofs initially before the trial court on the issue raised by the motion to dismiss, and upon which the former order denying the motion is based, are set out in extenso in the dissent to the former majority opinion of this court. The action of the majority on that appeal (in vacating the order denying the order to dismiss and remanding the cause for the taking of additional proofs on the issue of venue and entry of a new order thereon) can only be rationalized on the theory that proofs then available were insufficient to support the order denying the motion — a premise with which I heartily agree — and that by permitting additional proofs facts might be developed sufficient to support venue in Leon County; otherwise the order then on appeal should have been summarily affirmed.
The order now reviewed summarizes the supplemental proofs as follows:
(1) The only personal property owned by the defendant which is located at Tallahassee (or Leon County) is a typewriter.
(2) During May, 1958 (the month the suit was filed) only .4 of 1% of the news space printed in The Tampa Tribune originated from news reporters reporting from Tallahassee. For the year, the amount is .7 of one per cent.
(3) Mr. Waldron, the full-time salaried reporter, resides in and owns a home in Leon County and is there a registered voter; during legislative sessions he seldom leaves Leon County, but at other times he is subject to assignments elsewhere whenever a newsworthy story occurs. Such assignments take him out of Leon County for periods from one to five days at a time and to places as far away as Miami, Jacksonville, Tampa and Winter Haven. When he is working in and around Tallahassee, he uses the facilities provided for news agencies in the Capitol Building at Room 7 of the second floor. In that room, presumably available for his use and actually used, are three filing cabinets, a desk, sundry chairs and two typewriters.[1] There is also a tele *467 typewriter in the office directly connected to the main Tribune office in Tampa. At the time of Waldron’s testimony, December 22, 1959, only Waldron was using this room, but at other times (and still available to them) the room is shared by other newspaper correspondents.
(4) A telephone subscribed by defendant, and listed in both direct and classified sections of the telephone directory as “Tampa Tribune News Bureau” is installed in Room 7 of the Capitol. In the Classified section of the directory it is under the classification of “News Service”.
(5) Generally speaking, Room 7 is the only location in which Mr. Waldron works in Tallahassee, but on some occasions he does use other rooms in the Capitol temporarily. Of course, the very nature of a reporter’s work requires that he move about from place to place where the news and personalities in the news may be found, contacted, and interviewed.
(6) No effort is made to man the office for the defendant at all times. When Wald-ron is there and the telephone rings he answers it. If he is not there it is not answered.
(7) The telephone is used a great deal. Frequently incoming calls are from subscribers complaining of nondelivery of a paper. Such callers are referred to another number which is that of the independent distributor of the Tampa Tribune in Tallahassee. Other incoming calls are “tips” on news. Most of the outgoing calls are by Mr. Waldron and are long distance.
(8) Waldron’s sole function is news gathering. 'He does nothing about circulation, advertising, publishing or anything not directly connected with reporting news stories and writing his column on state politics.
As I interpret the supplemental proofs, they simply pinpoint the fact, as developed by the initial proofs, that the defendant does not maintain an “office” in Leon County “for the transaction of its customary business” within the meaning and purpose of F.S. § 46.04, F.S.A., and only show that an employee works there.
The order on appeal summarizes the law of the case on the issue of venue as laid down by the majority on the former appeal, as being to the effect that a domestic corporation, engaged in the business of publishing and distributing a metropolitan daily newspaper or newspapers with the ordinary associated activities of procuring circulation and servicing subscribers and advertising patrons, collecting and reporting news and other publishing material, and other incidentals to such a business, will be deemed to have and usually keep an office for the transaction of its customary business in Leon County when:
“(a) It stations in such county on a regular basis a full time salaried employee as its reporter; and
“(b) Space at a fixed location in a public State building in Leon County is made available to and used by such reporter to facilitate the performance of his reporting duties; and
“(c) The use of such space by such reporter constitutes the regular transaction of any substantial part of the customary business of the defendant.”
On the above findings of law and fact, the trial court then held:
“The fixed location used by a full time salaried reporter and columnist of the Tribune as above stated appears to establish that Tribune does engage in the ‘transaction of its customary business * * * from a fixed location within [Leon] County to such an extent that it is actually present there and has such a responsible agent as would presumably bring home to it notice of a summons served upon him as its representative.’ See opinion of First District Court of Appeal in this case.”
The trial court’s above quotation from the opinion of the majority on the former *468 appeal emphasizes what I consider to he the fundamental error permeating the result of this and the former appeal, that is to say: The statute governing service of process upon corporation (F.S. § 47.17, F.S.A.), which is not involved on these appeals, has been confused and inaccurately intertwined with F.S. § 46.04, F.S.A., governing venue in suits against corporations. It is elemental that F.S. § 47.17, F.S.A., is confined to and strictly limits the persons upon whom service may be made to bind the corporation. Contrary to but paraphrasing the rule laid down by the majority in the former appeal, I suggest that none except those persons specified by F.S. § 47.17, F.S.A., as qualified to accept service of process on behalf of corporations are clothed by law with the mantle of “a responsible agent” of the corporation for such purpose — as one who can “presumptively bring home to it [the corporation] notice of a summons served upon him as its representative.” Thus the legislative intent ascribed by the majority to the nonrelated statute governing venue (F.S. § 46.04, F.S.A.,) is not only incorrect but irrelevant to the issue of venue involved by this appeal. The venue statute, in its relation to domestic corporations, is clearly designed to limit — to a particular county or justice’s district — the place where suits may be commenced against such corporation. It is not contended that Mr. Waldron, defendant’s sole employee utilizing the so-called “office” and upon whose type of employment and position with the defendant this appeal necessarily turns, occupies either of the relations to the defendant as defined by F.S. § 47.17 F.S.A., governing service of process. It follows that no efficient purpose can be served by bringing to his attention the pendency of a suit against his employer. I am confounded, therefore, to understand what the majority had in mind in holding that service upon one such as he “satisfies the venue requirements of the statute” [115 So.2d 174], especially as we have no issue involving service of process.
By the cited former opinion, the majority also held:
“Considering [the facts reflected by the proofs of the appellant in support of its motion to dismiss] in the light of the principle which places on Tribune the burden of clearly demonstrating that the venue selected by Approved is improper, we are not prepared to hold that the chancellor abused his discretion in entering the order now reviewed.”
The trial judge does not enjoy any discretionary power in a proceeding such as this, other than that of weighing the truth or falsity of the evidence and accepting that which is believed to be true; but even that discretion does not exist where the proofs are uncontradicted and the evidence not otherwise challenged. Under such circumstances venue does or does not lie according to the proofs as measured by the statute, and that is the end of it.
The prior opinion of the majority cites Inverness Coca-Cola Bottling Company v. McDaniel, Fla.1955, 78 So.2d 100. In that case Mr. Justice Hobson, speaking for our Supreme Court, observed that with the advent of modern means of communication the importance to the defendant of being sued in the county or justice’s district where limited by the venue statutes has diminished. While the observation may not be gainsaid, the citation is not definitive of the conclusion of the majority in this case. It refers only to the degree in which one may be affected by a suit commenced elsewhere than as provided by the statute. It is not a holding, nor has it ever been said, that the trial courts may exercise any discretion in respect to one who rightfully asserts the privilege of being sued at the place provided by the venue statutes.
In Okeechobee Co. v. Rambo, 103 Fla. 687, 138 So. 761, 762, the trial court’s order denying a plea of privilege was reversed because the proofs reflected that at the time the suit was commenced defendant *469 had completely discontinued an office which allegedly it had previously maintained in the county where the suit was brought. Moreover, the property in litigation was located in Okeechobee County, defendant’s principal place of business was in Okeechobee County, and the contract of sale sued on was consummated at its office in Okeechobee County. Hence the question of what activities constitute the keeping “usually” of “an office for the transaction of its [domestic corporation] customary business” within the contemplation of F.S. § 46.04, F.S.A., was not directly determined. However, the Supreme Court, speaking through Terrell, J., therein laid down the following rule:
“ ‘An office for the transaction of its customary business,’ as applied to a domestic corporation, must have reference to its home office, permanent office, or office through which its principal business is transacted. It would not apply to a temporary office conducted by an agent for his convenience which is subject to abandonment at any time.”
The controlling decision of this court in the case on review, as well as in the case on whose authority it depends, flies squarely in the face of this rule.
In Central Life Ins. Co. of Florida v. Afro-American Life Ins. Co., Fla.1952, 61 So.2d 653, 654, the complaint alleged that the defendant had and usually kept an office for the transaction of its customary business in Duval County, Florida, where the suit was brought, and defendant’s answer admitted that it had and usually kept an office for the transaction “of portion of its customary business” in Duval County. Hocker, Associate Justice, speaking for the Supreme Court in affirming denial of defendant’s plea of privilege, referred to that admission of the answer and said, as I agree:
“That is enough to come within the statutory requirement that suit shall be brought in the county where a domestic corporation ‘Shall have or usually keep an office for the transaction of its customary business’.”
There is obviously no similarity between the situation there and the case on review.
In the Kentucky case of Hill v. Cumberland Dairies, 288 S.W.2d 341, the contradictory proofs were such that the trial judge was entitled to conclude, as the plaintiff alleged, that the defendant corporation employed the plaintiff in the county where the suit was brought as its resident manager; that it employed a full-time bookkeeper there; that raw milk was received at and processed milk products distributed from this place of business; that records pertaining to local customers were kept there; and that receipts from customers were collected and deposited in a local bank. This is a far cry from the facts in the case on review.
Relying on what I conceive to be the sound rule of reason as announced in Okeechobee Co. v. Rambo, supra, it is my opinion that at the least the word “office”, as used by F.S. § 46.04, F.S.A., in reference to domestic corporations, means a place it usually occupies for the transaction of business of an executive or semi-executive type, or of a type so closely related to the policy-making or executive activities of the corporation as necessarily to be treated as an integral part thereof. I do not think it was the legislative intent to enable suits against domestic corporations to be brought in a county or justice’s district where, as here, there is simply available to it a place or quarters where an employee performs labor, however technical in character, which is totally detached from the internal affairs of the corporation. Statutory restrictions on the place of suit are unquestionably designed to alleviate the harassment, inordinate expense, inconvenience, and other obvious injustices that were doubtless found to exist under an order where venue was unlimited.
This case should not be studied with an eye to the advantages or disadvantages to *470 either party in the application of the venue statute. Otherwise, a plaintiff may be left substantially free' to choose his own forum, subject to guidance by considerations of local prejudice for and against himself or the defendant. We must assume that the legislature ignored or devitalized these irrelevancies by establishing a venue that works for an orderly procedure, compelling the courts to adhere thereto, regardless of where the administrative chips may fall. I feel these principles suffer grievous injury by the rule of the majority.
Accordingly, I dissent.

. Tribune claims to own but one typewriter. dron personally. Presumably the other is owned by Wal-